ROBERT W. BAKER *v.* JOHN H. BURTON and HARBESON HICKMAN.

If a tenant with the knowledge that the premises in his possession are to be sold on a judgment and execution against his landlord before the expiration of his tenancy, prepays the rent for the year to him with a view to prevent the purchaser at the sale of them from obtaining any portion of it, and without the knowledge of the purchaser at the time of bidding for them, it will be characterized by bad faith and tainted with fraud in

contemplation of law, and the latter will accordingly be entitled to distrain for and to recover his proportion of the rent from the time of the sale under the statute in such case made and provided, after the return of the execution and confirmation of the sale by the Court and a deed is made to him by the Sheriff for the premises.

THIS was an action of replevin by Robert W. Baker for goods distrained by John H. Burton as bailiff, and Harbeson Hickman as his landlord for the rent of a farm in Lewes and Rehoboth Hundred, from the 9th of October to the 25th of December, 1861. The premises had been leased for the year at a rent of three hundred dollars, to Baker by John W. Walker, against whom there was a judgment in this Court, on which a *fi. fa.* had been issued December 7th, 1860, returnable to April Term, 1861, and upon which an *inquisition* had been held on the 12th of March, 1861, and on which the lands had been condemned and sold at Sheriff's sale and bought by Hickman on the 9th of October following. The sale was confirmed at the return term of the Court and a deed therefor was made and delivered by the Sheriff to Hickman on the 5th of November, and the lease of the plaintiff expired on the 25th of December ensuing. The claim of Hickman for rent, and for which the distress had been levied, was for the portion of it which had accrued from the 9th of October to the 25th of December, 1861. Walker had been in the habit of taking Baker's note for the whole amount of the annual rent of the premises, every year in advance to assist him in his business, and had also on the 17th of April, 1861, taken his note for $300, for the rent of that year in advance, and had given him a receipt in full for it. He afterward transferred the note to his brother Thomas Walker, who gave him money upon it, and Baker delivered the rent corn for that year to another at Lewes who paid the money due on the note to his brother. Baker had notice of, and was present at, the *inquisition*, which was held on the premises, and was examined as a witness to prove the rental value of them; and afterward, in April, 1862, was heard to say to Hickman that he had paid Walker

seventy-five dollars on the rent of the farm for 1861, and that was all the rent he had paid for that year.

*Robinson*, for the defendants: The note of Baker given in April for three hundred dollars in full of the rent for the whole year of 1861, did not discharge it in law, and the distress for the portion of the rent which accrued to Hickman after he became the purchaser of the premises under the judgment and execution against Walker would lie. The evidence showed that as early as the 12th of March in that year, when the *inquisition* was held and in which he was examined as a witness, and more than a month before he gave the note to Walker in payment of the whole rent in advance for that year, Baker well knew that the farm was then under process of execution, and would in all probability be sold for the payment of the judgment before the close of the year, and that whoever might become the purchaser of it at such sale, would be justly and legally entitled to the rent accruing after the sale; and the circumstances proved were such as to warrant the declaration and belief that it was given with the view and for the purpose, both on his part and the part of Walker, of secretly preventing any purchaser of the premises at the impending sale under the judgment from receiving any portion of the rent for that year. And if such was the case, the transaction was fraudulent and was, therefore, absolutely null and void, as against such a purchaser.

*Cullen*, for the plaintiff. May not any debtor rightfully and lawfully pay a debt before it becomes due? The plaintiff certainly had a perfect and unquestionable right to prepay the rent to his landlord for 1861, on the 17th of April in that year, for the accommodation and convenience of the latter, if such was his inclination, provided it was fairly done in good faith, for Hickman up to that time had acquired no right, title, claim or interest whatever in any portion of either the rent or the premises, because neither the judgment under which he afterward became the pur-

chaser and owner of them, nor the process then issued upon it, was any lien, or had any binding effect on the rent, or any portion of it then or afterward accruing upon the lease. But if there was any legal fraud in the transaction, it would be a very different matter, and the note and prepayment of the rent by means of it would not avail against such a purchaser, because fraud will vitiate any contract. He would, therefore, ask the Court to charge the jury that as Baker, the plaintiff, had paid the rent in full for the year in question to his rightful landlord, Walker, before Hickman, the defendant, had acquired any right, title or interest in the premises, or any claim whatever to any portion of the rent, the plaintiff was entitled to recover.

*The Court, Gilpin, Ch. J., charged the Jury :* In this case John W. Walker was the owner of a farm situate in Lewes and Rehoboth Hundred, which he rented by a written lease, under seal, to Robert W. Baker, the plaintiff, on the 19th of March, 1859, at a rent reserved of $300 per annum, payable on the 25th day of December following. On the 9th of June, 1860, a creditor of Walker, the landlord, by the name of Overman, recovered a judgment against him in this Court for the sum of $375, on which he sued out a writ of *fieri facias* on the 7th of December, 1860, returnable at the April Term, 1861, to which there was a return of no goods, and on the 12th of March of the latter year, and before the return of the *fi. fa.*, an *inquisition* was held on these lands, which were found insufficient in productive value to rent for enough in seven years to pay this judgment, the execution on which had been levied on the farm in question, together with other judgments, liens and incumbrances against Walker and binding upon the same. Baker, the lessee and tenant of Walker, was still in possession of the farm at this time under the lease before mentioned, and still continued in the tenancy of it as such lessee until the 25th of December, 1861. On the 27th of April, 1861, a writ of *venditioni exponas* was sued out by Overman on this judgment against Walker, on which the

farm was afterward duly advertised and sold by the Sheriff of the County, on the 9th of October, 1861, to Harbeson Hickman, one of the defendants in the present action, to whom the sale was duly returned at the ensuing term of the Court and was confirmed, and which land was afterward conveyed by order of the Court by deed of the Sheriff to the purchaser, Hickman, on the 5th of November, 1861.

Under these circumstances and the provisions of our statute in such cases, Harbeson Hickman, the purchaser of the farm, claims that portion of the rent for the premises from the day of the Sheriff's sale and purchase by him on the 9th of October, 1861, until the 25th of December following, it being for two months and sixteen days at the rate of three hundred dollars per annum, that being the rent reserved by the lease under which Baker, the tenant, still held it at the time of the sale by the sheriff and up to the date last mentioned, and Baker the tenant, having declined and omitted to pay it to him, he employed John H. Burton, his co-defendant, as his bailiff, to levy a distress on the goods and chattels of Baker the tenant and plaintiff in this action of replevin, to enforce the collection of this portion of the rent claimed by him, and which under the statute he had a legal right to distrain for, provided it was legally due and payable to him. The provisions of the statute referred to are as follows: "In any case of sale of land on judgment and execution by a Sheriff as aforesaid, the purchaser shall be entitled to rent for the premises sold from the day of sale. If such premises be in possession of a tenant under rent, such rent shall be apportioned according to time; the proportion for the time the rent has been growing due to the day of sale, being payable to the lessor or his assigns, and the residue to the purchaser; and each party shall have remedy by distress, or action, for his just proportion. A purchaser at such a sale may recover his proportion of rent, although such rent be reserved by deed, as well as rent from the day of sale, in case no rent has been reserved, by an action of assumpsit for

use and occupation. In any action, or proceeding for such rent, any fair defence which would have availed against the person as whose property the premises were sold, shall avail against the purchaser" &c.—*Revised Code*, 398, 399, *Chapter* 28. Hickman the purchaser and one of the defendants therefore, directed his co-defendant Burton, as his bailiff or agent, to levy a distress in his name on Baker the plaintiff, for the proportion of the rent of the farm claimed and demanded by him from the day of sale, which was done, and the plaintiff thereupon instituted this action of replevin against them jointly to recover the goods and chattels so distrained. Burton defends the action and makes cognizance of the taking and justifies the distraint of the goods as the bailiff of Hickman, under the purchase aforesaid, for the rent claimed by him, and Hickman for himself avows the taking and justifies the distress on the same ground; and the main, if not the only question to be determined by the jury in the case is, whether he was entitled to the portion of the rent from the day of sale until the expiration of the lease. If he is entitled to it, then the verdict should be for the defendants, but if not, then it should be for the plaintiff.

In the latter clause of the section just cited from the statute, it is provided that in any action, or proceeding for such rent, any fair defence, which would have availed against the person as whose property the premises were sold, shall avail against the purchaser. The terms here employed are "any fair defence," and would probably be much more vague and indefinite than they really are in point of fact, if they were not to be understood to refer to certain cases which have long been adjudged, and to a principle long settled at common law, and to which of course it must have reference. It will be observed on reading carefully the clause of the section in question, that the fair defence therein provided for does not refer so much to payments made on account of the current rent of the year, by the tenant directly to his landlord, but to certain liabilities for which the premises and the goods and

chattels of the tenant thereon are liable to be seized or distrained at the suit of another person, and to be sold with or without the tenant's sanction and consent to satisfy such demands. In these cases, however, the defence of the tenant against the demand of rent from his landlord or his assigns or purchaser, is urged under the plea of *riens in arrears,* or no rent in arrear, and this is the only general plea under which such a defence can be properly adduced in such a case, as such collateral demands, when satisfied out of the current rent due from the tenant, cannot be said to be payments toward the rent to the landlord or his assigns, because they are paid to third persons who have such demands against the landlord, with the legal right to collect them, if they choose, out of the premises or the property of the tenant upon them. Such for instance, is the plea of the tenant to the demand of his landlord or assigns for rent, that he has paid the rent to a superior landlord under a threat of distress, which is usually pleaded specially, although it may be given in evidence under the plea of *riens in arrear,* or no rent in arrear, but which cannot be done under a plea of payment generally, because that necessarily imports that it was made to his immediate landlord of whom he rented. The payment in the case just supposed, is none the less compulsory because the ground landlord has allowed the tenants time to pay. So where a claim of interest on a mortgage, charged on the premises demised, was paid with the landlord's assent, the tenant may prove and be allowed for it under this plea of no rent in arrears.—*Saund. on Pl. and Ev. Vol.* 2, *Part.* 2. *Tit. Replevin,* 791, 792. Other cases of a similar nature might be instanced in addition to these, which would show that it was more particularly to meet cases of this kind that the latter clause in the section of our statute referred to was designed and framed, in order to enable a tenant thus paying such paramount and superior, though collateral claims against the demised premises themselves and even upon his own goods and chattels thereon, to reimburse himself for the amount thus paid, out of the rent

due his landlord, and to recover it under such plea in an action by the latter against him for the rent, and not so much to enable the tenant to plead as against a subsequent purchaser of the premises under judgment and execution at Sheriff's sale, any payments which he may have made on account of the rent to his landlord of whom he rented, by way of advancement and even in anticipation of an approaching sale by such means, provided it be fairly and honestly done; because the statute is clearly so worded in this respect as to contemplate only such defences as we have before mentioned. Any fair defence there referred to, evidently from the terms used, having relation to such superior claims upon the premises themselves and the property of the tenant, as we have before stated and which must be paid to some other or a third person, and not to the landlord himself as a mere voluntary payment. Because when the tenant pleads to the demands of his immediate landlord for rent, that he has paid rent to a superior, or ground landlord of the premises and that there is consequently no rent in arrear, it is not sufficient, unless he further alleges and proves even in such case, that he was threatened with a distress for it and would have been distrained upon had it not been paid; and which conclusively shows that the tenant even in such cases, is not privileged or permitted to pay such stringent and superior demands as these at his own will and pleasure, much less to prepay at his option and discretion his current rent to his immediate landlord without regard to the rights and interests of others, or of strangers which may in the meantime have attached in the matter, or which may, perhaps, be about to attach in a short space of time thereafter.

But it has been proved in this case on the part of the tenant, Robert W. Baker, the plaintiff in the present action, that he gave John W. Walker, his landlord, and then the owner of the farm, on the 17th day of April, 1861, his note for the sum of three hundred dollars, the amount of the rent of that year to accommodate Walker, but no part of which was due and payable by the terms and reservation

of his lease, until the 25th of December following; but when the note was payable, or when it was actually paid, we are not informed. Mr. John W. Walker, however, we are informed, received the money upon the note from his brother Thomas Walker, and when the tenant, Baker, had gathered his corn crop for that season in the ensuing fall or winter from the premises, he hauled and sold it to Mr. Rickards, a merchant at Lewes, who paid the money for it to Mr. Thomas Walker on the note. But this note it will be observed was given for the rent of that year by Baker, the tenant, to Walker the landlord, not only several months before the rent became due, but before Hickman, the defendant became the purchaser of the farm on the 9th of October following and before he had acquired any right, title; interest, property or claim whatever in or to the same. It appears, however, and has been proved by the testimony of more than one of the inquisitors, that the tenant of the farm, the plaintiff in the present action, Robert W. Baker, was before them and was examined as a witness by them upon the *inquisition* held on the farm on the 12th of March, 1861, more than a month before the note was given by him to Walker for the rent of that year, to prove the annual rental value of the premises, and that he must therefore have been fully cognizant of the fact that the farm on which he resided was already in due process of legal execution, and in a short time would be sold by the Sheriff to satisfy the debts of his landlord; and from which the defendants infer and insist that the transaction with regard to the note was merely entered into between the landlord and tenant, the parties to it, to secure to the former the rent of the premises for the whole of the then current year notwithstanding a sale of the premises should in the meanwhile take place, and to prevent the purchaser from obtaining any portion of it, and that it was therefore fraudulent and void, and of no legal effect or validity.

In regard to the payment of the rent for the year 1861, by Baker to Walker for the farm in question, the testimony adduced on the trial on behalf of the defendants is certainly

very much in conflict with that adduced and before referred to on the part of the plaintiff as to the same point; for it will be remembered that on the part of the defendants it was proved by one of their witnesses that he was present at an interview and conversation between the plaintiff, Baker, and the defendant, Hickman, on this subject in the month of April, 1862, when the former told the latter he had paid Mr. Walker seventy or seventy-five dollars on the rent of the farm in question for the year 1861, and it was all the rent he had paid him for that year. If that was so and his declaration to that effect was true, or if on the contrary, the jury should be satisfied from all the evidence they have heard in the case, that such a note had been given by Baker to Walker for the rent of the whole year of 1861, and that it had afterward been paid in full in the manner before stated, but that the design of the plaintiff in thus prepaying the rent to Walker under the circumstances, was to prevent the purchaser of the premises at the sale under the judgment from obtaining any portion of it after the sale, it was not such a transaction as the law could sanction in a tenant under such circumstances, for being a private transaction between him and his landlord and unknown at the time to Hickman, it was characterized by bad faith and tainted with fraud in legal contemplation toward him as a bidder for and the purchaser of the premises at such sale, and the plaintiff, therefore, in that event, would not be entitled to recover in the action. If, however, the jury should be of a different opinion, after weighing and considering all the evidence and should be satisfied that the whole rent was so prepaid for the year in question, with no such intention on the part of the plaintiff, but only with a view and for the simple purpose of accommodating and befriending his, landlord, Walker, with his note in advance, for the amount of it in money, then he would be entitled to recover.

The defendants had a verdict.